```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                      EASTERN DIVISION
```

**RANDY WERNER,**

          **Plaintiff,**

  **vs.**                                    **Civil Action 2:10-CV-741**
                                                    **Judge Watson**
                                                    **Magistrate Judge King**

**MICHAEL J. ASTRUE, Commissioner**
**of Social Security,**

          **Defendant.**

## REPORT AND RECOMMENDATION

       This is an action instituted under the provisions of 42 U.S.C. §§405(g) and 1383(c) for review of a final decision of the Commissioner of Social Security denying plaintiff's applications for disability insurance benefits and supplemental security income. This matter is now before the Court on plaintiff's *Statement of Specific Errors,* Doc. No. 12, the Commissioner's *Memorandum in Opposition,* Doc. No. 13, and plaintiff's *Reply,* Doc. No. 14.

       Plaintiff Randy Werner filed his applications for benefits in September 2004, alleging that he has been disabled since September 19, 2004 as a result of a broken back, crushed right pelvis, memory problems, broken jaw (right), hearing problems, numbness in the right arm and pain on the left side of the head. *A.R.* 68. The applications were denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

       On December 10, 2007, plaintiff, represented by counsel, appeared and testified at a hearing, as did Brian L. Womer, who testified as a vocational expert. In a decision dated May 14, 2008, the administrative law judge concluded that plaintiff is not disabled within the meaning of the Social Security Act. That decision became the final decision of the Commissioner when the Appeals Council denied review on June 17, 2010.

       Plaintiff was 36 years old at the time the administrative law judge issued his decision. *A.R.* 27, 58. He has an eighth grade, "limited," education, *A.R.* 73, and prior relevant work experience as a

telemarketer, general laborer, construction laborer and press operator. *A.R.* 89-96.

Plaintiff testified at the administrative hearing that he weighs 330 lbs. *A.R.* 641. He cannot work because of "constant pain" in his legs and lower back, which is aggravated by walking. *A.R.* 643, 646. He attributes the pain to a car accident, and does not believe that his obesity contributes to his pain. *A.R.* 644. Plaintiff also complained of sensory problems in his right hand. *A.R.* 647. His hand sometimes freezes in one position. *A.R.* 657. He frequently drops things and cannot use his hand to button his shirt. *A.R.* 657-58. Although plaintiff admitted to prior problems with alcohol, *A.R.* 647, he testified that he quit drinking some months prior to the administrative hearing. *Id.*

Plaintiff estimated that he can stand for ten minutes and sit for thirty minutes. *A.R.* 650-51. When he leaves his home, he uses a wheelchair, which was prescribed for him by his physician, because he is "not able to stand up." *A.R.* 652.

As to his activities of daily living, plaintiff does not cook, sweep, mop, vacuum, do laundry, grocery shop, go out to eat or go to church; he sometimes washes the dishes. *A.R.* 652-53. He has not left his home in "probably three or four months... other than to go to my doctor's appointments." *Id.* He does speak to a neighbor and to his mother. *A.R.* 654.

Plaintiff does not challenge the administrative law judge's evaluation of the evidence relating to his alleged mental impairments. *Statement of Errors*, pp. 10-16. Rather, plaintiff challenges the administrative law judge's evaluation of the medical evidence relating to his exertional residual functional capacity. Accordingly, the Court will focus its review of the medical evidence on plaintiff's alleged exertional impairments.

On February 17, 2004, plaintiff presented to the emergency room at Southeastern Ohio Regional Medical Center complaining of increased right-knee pain following recent work activity. *A.R.* 570-71. X-rays showed mild degenerative changes. Plaintiff was placed in an immobilizer for a diagnosis of probable internal derangement. *Id.*

Plaintiff was hospitalized from September 19 to October 8, 2004 following a motor vehicle accident. *A.R.* 132-356. His injuries included a severe right acetabular fracture (broken hip socket), T4 and T11 fractures, four right-side rib fractures, facial fractures and concussion. *A.R.* 133-34, 141-42, 182-85, 432-34. Plaintiff underwent open reduction and internal fixation of the acetabular fracture. *A.R.* 135-36. His thoracic spine vertebral fracture was treated without surgery. *A.R.* 133, 135, 144-45, 191. Upon discharge, plaintiff was transferred to rehabilitation. *A.R.* 133, 367, 380-88, 432-33. While in rehabilitation, plaintiff complained of right arm numbness and weakness in his grip. *A.R.* 433. Examination revealed mildly reduced grip strength in his right arm. *A.R.* 434. Plaintiff was discharged with satisfactory progress after about a week. *A.R.* 432-34.

Plaintiff presented to the emergency room on October 29, 2004, with complaints of right hip and back pain. *A.R.* 556. Examination revealed that plaintiff's back was mildly tender. He was discharged with medication. *A.R.* 557.

Plaintiff again presented to the emergency room with right leg and foot pain in November 2004. *A.R.* 554. He was diagnosed with post-traumatic pain and a skin infection in his foot, given medication and released. *A.R.* 555.

Plaintiff saw Brian L. Davison, M.D., an orthopedist, in November and December 2004 for follow-up in connection with his hip fracture. *A.R.* 467-80. Plaintiff also complained to Dr. Davison of right wrist pain and tingling in his fingers. *A.R.* 468, 471, 475. Dr. Davison found full grip strength, and x-rays were negative. *A.R.* 475. In December, Dr. Davison noted that the hip fracture was healing and that plaintiff could withstand partial weight bearing with 50 to 75 pounds. *A.R.* 468.

Consulting neurosurgeon Akram Mahmoud, D.O., reported on December 10, 2004 that plaintiff had full strength in his arms and almost-full to full strength in his legs. *A.R.* 484-85. Dr. Mahmoud also noted slight involuntary muscle contractions in plaintiff's right arm. *Id.* Dr. Mahmoud recommended further diagnostic testing. *Id.*

Plaintiff presented to the emergency room on January 14, 2005 with "alcohol poisoning." *A.R.* 552-53. He was later discharged in a stable and ambulatory condition. *Id.*

A CT scan of plaintiff's thoracic spine taken on January 24, 2005 revealed healing fractures in two vertebrae with no spinal canal stenosis. *A.R.* 482. An EMG performed that same day was consistent with right S1 lumbar radiculopathy; testing of the right arm was negative. *A.R.* 487-88.

On March 31, 2005, James Chlovechok, M.D., reported to the local Department of Job and Family Services that plaintiff was limited to standing or walking 2 to 3 hours a day, to sitting 6 hours a day and to lifting and carrying no more than 5 pounds. *A.R.* 582-83. Referring to plaintiff's hip fracture, knee lacerations, right arm pain, right foot drop, vertebral fracture, low-back radiculopathy and hypothyroidism, Dr. Chlovechok opined that plaintiff was markedly limited in his ability to push, pull and bend and was extremely limited in his ability to engage in repetitive foot movements. *Id.* Dr. Chlovechok also noted that plaintiff is 5' 7" and weighed 252 pounds; he ambulated with a cane. *Id.* Dr. Chlovechok concluded that plaintiff is unemployable. *Id.*

On April 4, 2005, Jerry McCloud, M.D., reviewed the record for the state agency and opined that plaintiff can lift and carry up to 20 pounds occasionally and up to 10 pounds frequently. According to Dr. McCloud, plaintiff can stand or walk, and can sit, for approximately 6 hours in an 8-hour workday. *A.R.* 509.

On May 3, 2005, Raj Tripathi, M.D., consultatively examined plaintiff at the request of the state agency. *A.R.* 516-25. Dr. Tripathi noted that plaintiff is 66 ¼ inches tall and weighs 242 ½ pounds. *A.R.* 517. Plaintiff complained of pain and discomfort in his right upper and lower extremities and appeared to be in discomfort because of back pain. According to Dr. Tripathi, plaintiff's use of a cane was not necessary in light of his normal gait. *A.R.* 519. On clinical examination, plaintiff had positive straight-leg-raise testing and had poor range of motion of the hip. *Id.* Dr. Tripathi noted plaintiff's "poor effort" on muscle testing, including reduced grip strength in the right hand, which Dr. Tripathi found to be not reliable. *A.R.* 519-20. Dr. Tripathi opined

4

that plaintiff can sit for 3 to 4 hours, can stand for 3 to 4 hours and can walk for approximately 1 to 2 hours; he can lift approximately 30 to 40 pounds with his left hand. *Id.* X-rays showed fixation of the acetabular fracture with satisfactory healing and mild degenerative changes of both hips. *A.R.* 524.

On May 20, 2005, plaintiff presented to the emergency room complaining of right-hip and back pain. *A.R.* 550-51. Plaintiff was observed to use a cane and to limp. Examination revealed moderate tenderness from T11 through L1 and the sacroiliac area bilaterally into the right hip; straight leg raising was positive on the right. There was decreased sensation to light touch on the right; motor and reflexes were normal; there was reduced range of motion of the spine in all directions. *Id.* Plaintiff was prescribed pain medications and discharged. *Id.* Plaintiff returned to the emergency room on May 29, complaining of increasing pain in his right back and ribs. *A.R.* 548-49. X-rays showed no fractures. *Id.* On June 1, 2005, plaintiff returned to the emergency room once again complaining of back pain without radiation. *A.R.* 546-47. Straight leg raising was negative bilaterally. *Id.* Strength and reflexes were intact. *Id.* He was provided Toradol, Valium and morphine and was discharged. *Id.*

State agency reviewing physician Augusto Pangalangan, M.D., opined in June 2005 that plaintiff could lift twenty pounds occasionally and ten pounds frequently. According to Dr. Pangalangan, plaintiff could stand/walk and sit for about six hours in an 8-hour workday. *A.R.* 527-33.

On March 20, 2006, Dr. Chlovechok opined that plaintiff could stand or walk for 1 to 2 hours in a day and could sit for 4 hours; he could lift and carry no more than 5 pounds. Dr. Chlovechok found that plaintiff was markedly limited in his ability to push and pull and in his ability to engage in repetitive foot movements; plaintiff was extremely limited in his ability to bend. *A.R.* 580. Plaintiff's weight was 271 pounds. Dr. Chlovechok commented that plaintiff's condition was deteriorating. *A.R.* 579. According to Dr. Chlovechok, plaintiff was unemployable. *A.R.* 580.

Plaintiff treated with pain management specialist Michael Sayegh, M.D., from December 2005 to April 2007. *A.R.* 572-76, 584-85, 589-601. Initially, Dr. Sayegh diagnosed chronic hip pain status post ORIF, lumbago, lumbar area sprain/strain and sciatica in the right leg. *A.R.* 575. On December 16, 2005, an MRI of the lumbar spine showed disc degeneration with radial annular tear and central protrusion of the L5-S1 disc into the epidural fat without central or neural foraminal narrowing. *A.R.* 574. On April 29, 2007, Dr. Sayegh completed a physical capacity assessment form in which he indicated that plaintiff was limited in his ability to lift and carry, although the doctor did not specify any particular weight. *A.R.* 586. Plaintiff was also limited in standing/walking/sitting to 4 hours in a workday, for 1 hour at a time. *A.R.* 586-87. Plaintiff could occasionally climb, crouch, kneel and crawl and was mildly limited in his ability to push and pull. *A.R.* 587. Plaintiff was also mildly limited in his ability to work around moving machinery, temperature extremes and noise. *A.R.* 588.

Plaintiff saw John B. Gholl, M.D., a Board-certified allergist and ENT specialist, from July through November 2007. *A.R.* 605-10, in connection with plaintiff's traumatic injuries, sciatica, and hypothyroidism. *A.R.* 610. Although x-rays suggested possible necrosis or infection of the head of the right femur, *A.R.* 614, 615, a bone scan established that necrosis was unlikely. *A.R.* 612. On November 20, 2007, Dr. Gholl opined that plaintiff required a motorized chair for extended ambulation and crutches to stand. *A.R.* 602. According to Dr. Gholl, plaintiff could lift no more than 10 pounds and could stand or walk for only 2 hours per day. He could sit 3 hours per day and could occasionally climb, balance, and stoop; he could never crouch, kneel or crawl. *A.R.* 603. According to Dr. Gholl, plaintiff was limited in his ability to reach, handle, push and pull based on a "mandatory need for 3-point vertical support at all times" due to bilateral thigh bone fractures. *Id.* Dr. Gholl also limited plaintiff from working around heights, moving machinery, temperature extremes, humidity and vibration. *A.R.* 604.[1]

---

[1] The record also includes certain records presented to the Appeals Council after the administrative law judge issued his decision. *A.R.* 619-25. Those records are not before the Court for substantial evidence review. *See*

At the administrative hearing, the vocational expert referred, not to the area of plaintiff's residence in Cambridge, Ohio, but to the regional economy of Dayton-Cincinnati-Springfield because that latter region is "representative of other regions in the national economy." *A.R.* 662. The vocational expert was asked to assume a claimant with plaintiff's vocational profile and a residual functional capacity described by consulting physician Dr. Tripathi, with the additional need to alternate positions. A.R. 662. The administrative law judge asked the vocational expert to assume that Dr. Tripathi's limitation on lifting with his left hand did not mean that plaintiff could not lift with his right hand. *A.R.* 662-63. The vocational expert responded that such a claimant could work as a laundry worker and machine packager at the medium exertional level, as an assembly machine and injection molding machine tender at the light exertional level and as a polishing machine operator or wire insulator at the sedentary exertional level. *A.R.* 663. The vocational expert also testified that the residual functional capacity articulated by Dr. Chlovechok would restrict a claimant to a range of sedentary work. *A.R.* 664-66.  Dr. Sayegh's failure to specify a lifting restriction rendered his opinion vocationally irrelevant. *A.R.* 664-65.

In his decision, the administrative law judge found that plaintiff's severe impairments consist of the residuals of injuries sustained in a motor vehicle accident with multiple complaints of pain, obesity, alcohol abuse in alleged and questionable early remission, opiate dependence, depressive disorder and borderline intellectual functioning.  The administrative law judge also found that plaintiff has the residual functional capacity to perform a reduced range of medium exertion that requires no more than sitting three-to-four hours in a work day, standing three-to-four hours in a work day, walking one-to-two hours in a work day and lifting thirty to forty pounds using both hands; plaintiff would also be limited to low stress jobs that do not require dealings with the public, to jobs that do not require a fast pace or

---

*Foster v. Halter,* 279 F.3d 248, 357 (6th Cir. 2001). Plaintiff does not seek remand of the action pursuant to Sentence 6 of 42 U.S.C. §405(g) in connection with these records.

production quotas, to jobs that involve only unskilled, simple tasks and to jobs that permit him to alternate positions. Relying on the testimony of the vocational expert, the administrative law judge found that there are jobs that exist in significant numbers in the national economy that plaintiff can perform. Accordingly, the administrative law judge concluded that plaintiff is not disabled within the meaning of the Social Security Act. *A.R.* 16-29.

Pursuant to 42 U.S.C. §405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Buxton v. Halter,* 246 F.3d 762, 772 (6th Cir. 2001); *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *See Brainard v. Secretary of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Longworth v. Comm'r Soc. Sec.,* 402 F.3d 591, 595 (6th Cir. 2005).

In his *Statement of Errors*, plaintiff challenges the administrative law judge's residual functional capacity assessment as unsupported by substantial evidence. In a related argument, plaintiff also contends that the administrative law judge erred in rejecting the opinions of plaintiff's treating and examining doctors. Next, according to plaintiff, the administrative law judge failed to properly consider plaintiff's obesity as required by Social Security Ruling 02-1p. Finally,

plaintiff argues that the administrative law judge erred in relying on vocational testimony that failed to constitute substantial evidence for a step-five decision.

In finding that plaintiff has the residual functional capacity to perform a limited range of medium exertion, the administrative law judge relied primarily on the assessment of the consultative examiner, Dr. Tripathi and, to a lesser extent, on that of Dr. Pangalangan, the state agency reviewing physician. A.R. 25. Plaintiff contends that the administrative law judge erred in failing to adopt the findings of Drs. Chlovechok, Sayegh and Gholl. To be afforded controlling weight, the opinion of a treating physician[2] must be well-supported by medically acceptable clinical and laboratory diagnostic techniques, and must not be inconsistent with other substantial evidence in the record. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 242 (6th Cir. 2007); 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2). In weighing the opinions of treating physicians, an administrative law judge must consider factors such as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's supportability by evidence, and its consistency with the record as a whole. 20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927(d)(2) - (6); *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004). Even where the administrative law judge declines to accord controlling weight to the opinion of a treating physician, the administrative law judge "must still determine how much weight is appropriate. . . ." *Blakley v. Commissioner of Social Security,* 581 F.3d 399, 406 (6th Cir. 2009). Moreover, an administrative law judge must provide "good reasons" for discounting the opinions of a treating physician, *i.e.,* "reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers*, at 242, citing Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5.

The administrative law judge in this case rejected Dr.

---

[2]There is no evidence that Dr. Chlovechok ever treated plaintiff.

Chlovechok's March 2005 and March 2006 extremely limited residual functional capacity assessments, *A.R.* 582-83, 579-80, as unsupported by the evidence of record.

> It is recognized that Dr. Chlovechok, a family doctor, filled out Basic Medical reports for the county medical services (Welfare) in March 2005 and March 2006 wherein it was indicated that the claimant was "unemployable" and could do less than a full range of sedentary work. However, the degree of functional restriction and general finding of an "unemployable" status would seem inconsistent with the documented medical findings and the history of a good recovery from his injuries in September 2004. In terms of supportability and consistency, Dr. Chlovechok's opinions do not score well and are consequently given no controlling weight and little deference.

*A.R.* 25-26. (citation to record omitted). Plaintiff contends that Dr. Chlovechok's opinions are also supported by Dr. Gholl's findings that plaintiff is capable of sitting only three hours and standing or walking only two hours per day and lifting and carrying only 10 pounds. *See A.R.* 602-04. However, the administrative law judge also considered, but rejected, Dr. Gholl's conclusions.

> In November 2007, Dr. Gholl, an allergist, filled out functional assessment [form] for counsel which indicated that the claimant could lift no more than ten pounds occasionally and could not sit, stand, and walk long enough in combination to complete a full eight-hour work day. However, this allergist appears to have based most of the functional limitations on musculoskeletal problems which are outside his specialty and presumably not the impairments being treated by this physician. As Dr. Gholl was addressing matters outside his specialization and as his recommendations were not well supported by the medical findings, his opinion is given no controlling and no deferential weight.

A.R. 26. (citation to record omitted). This Court agrees that Dr. Gholl's conclusion of disability is entitled to little weight.

The administrative law judge found that plaintiff had the residual functional capacity to perform a limited range of medium work as noted above. This assessment finds substantial support in Dr. Tripathi's report following his consultative examination of the

plaintiff. For example, Dr. Tripathi opined that plaintiff could sit for about four hours, could stand for about 4 hours, could walk for about 2 hours and could lift approximately 30-40 pounds with his left hand. *See, A.R.* 519.  The fact that the administrative law judge limited plaintiff to lifting up to 40 pounds using both hands is not inconsistent with Dr. Tripathi's assessment. Further support for the administrative law judge's residual functional capacity is found in the records of plaintiff's treating pain specialist, Dr. Sayegh, who imposed no lifting restrictions (despite indicating that lifting would be limited) and who indicated that plaintiff could sit, walk and stand for four hours each, for one hour at a time. *See, A.R.* 586-87.  In short, the Court concludes that the administrative law judge did not err in his evaluations of the medical opinions reflected in the record.

      Plaintiff next contends that, in assessing plaintiff's residual functional capacity, the administrative law judge
failed to consider plaintiff's obesity and subjective complaints of pain. Plaintiff's argument in this regard is premised on Social Security Ruling 02-01p, 2000 WL 628049, which recognizes obesity as a medically determinable impairment that an administrative law judge must consider in evaluating disability, and which advises that the combined effects of obesity and other impairments can be greater than the effects of each single impairment when considered individually.  The Ruling requires that obesity be considered when assessing a claimant's residual functional capacity. *Id.* at *1, *5-6, *7. It is plaintiff's position that the administrative law judge erroneously failed to consider his obesity in combination with his other impairments: "[P]laintiff respectfully submits his extreme obesity contributed to his functional limitations, as well as his experience of pain, and that the ALJ's error warrants reversal." *Statement of Errors*, at 16).

    The administrative law judge expressly included obesity as one of plaintiff's severe impairments. A.R. 20. Plaintiff does not even suggest how his obesity imposed greater restrictions on his ability to engage in work-related activities than were found by the administrative law judge. Indeed, plaintiff testified that his obesity does not contribute to his

11

problems.  *A.R.* 644.  Ruling 02-01p specifically prohibits adjudicators from engaging in speculation in this regard:

> [W]e will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the case record.

2000 WL 628049, at *6.  The Court concludes that the administrative law judge did not err in this regard.

Finally, plaintiff, who lives in Cambridge, Ohio, contends that the administrative law judge erred in relying on the vocational expert's testimony because the vocational expert did not testify about the region where plaintiff actually lives.  During the hearing, the vocational expert referred to the Dayton-Cincinnati-Springfield region "as the region that's considered to be representative of other regions in the national economy."  A.R. 662.  The administrative law judge accepted this testimony as follows:

> In defining jobs which a hypothetical individual with the claimant's vocational profile and residual functional capacity could do, the vocational expert did not limit his consideration to the immediate area where the claimant lives, i.e., Cambridge, Ohio. However, 20 CFR 404.1566 and 416.966 provide, in pertinent part, that work exists in the national economy when it exists in significant numbers either in the region where the individual lives or in several other regions of the country. It does not matter whether the work exists in the immediate area where the
> individual lives or whether a specific job vacancy exists for him or her. In this case, the vocational expert testified to a number of jobs which I find significant in terms of the Dayton-Springfield-Cincinnati economy. The vocational expert's testimony indicated that the region has a work force of about 1.4 million (about one percent of the national work force), which is representative of the national economy, whereas the region where the claimant lives lacks a strong industrial or manufacturing base and is not representative of the national economy.

12

A.R. 28. The Social Security Act does not require that jobs exist in the claimant's actual area of residence, but instead requires only a showing that jobs that the claimant is capable of performing exist in the national economy and are not concentrated in merely one region. *Harmon v. Apfel*, 168 F.3d 289, 292 (6th Cir. 1999) (citing 20 C.F.R. § 416.966). Moreover, to the extent that plaintiff intends by this argument to dispute the accuracy of the vocational expert's testimony, plaintiff will not be heard to raise those objections before this Court in light of his failure to raise those factual issues at the administrative hearing.

In sum, and having carefully considered the entire record in this action, the Court concludes that the decision of the Commissioner is supported by substantial evidence. It is therefore **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED.**

If any party seeks review by the District Judge of this *Report and Recommendation,* that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation,* specifically designating this *Report and Recommendation,* and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1); F.R. Civ. P. 72(b). Response to objections must be filed within fourteen(14) days after being served with a copy thereof. F.R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *Smith v. Detroit Federation of Teachers,* 18 *Local 231 etc.,* 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

<u>Date:</u> August 9, 2011                    <u>   *s/Norah McCann King*      </u>
                                    Norah McCann King
                              United States Magistrate Judge